UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 5:94-CR-50068-02** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **SEBASTIAN RICHARDSON (02)** | |

### RULING

Before the Court is a Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act ("FSA"), filed by Defendant Sebastian Richardson. [Doc. No. 1276]. Pursuant to his motion, Defendant asks that his sentence for conspiracy to distribute cocaine base (Count 2) be reduced to 240 months incarceration, and that his term of supervised release be reduced to three years. *Id.* at 6. The government opposes the motion, arguing Richardson is not eligible for relief under the FSA. [Doc. No. 1278]. Alternatively, in the event the Court finds Richardson is eligible for relief, the government contends the Court should exercise its discretion and deny relief. *Id.* For the reasons set forth below, Defendant's motion is GRANTED IN PART, and the Court will REDUCE Defendant's term of imprisonment on Count 2 to 360 months.

### I.
#### BACKGROUND

On September 8, 1994, Richardson and thirteen others were charged in a thirty-nine count indictment alleging various federal offenses, including drug conspiracy, drug distribution, possession with intent to distribute, conspiracy to commit violent crimes in aid of racketeering, and firearms charges. [Doc. No. 1]. Specifically, Richardson was charged with the following offenses: Conspiracy to Commit Violent Crimes in Aid of Racketeering Activity in violation of 18 U.S.C. § 1959 (Count 1); Conspiracy to Distribute Cocaine and Cocaine Base in violation of

21 U.S.C. §§ 841(a)(1) and 846 (Count 2); and Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) (Count 22). [Doc. No. 1].

On February 13, 1995, the case proceeded to trial. [Doc. No. 536]. Testimony at trial established that the defendants were members of a Shreveport, Louisiana street gang called the Bottoms Boyz, which conducted "a large-scale, open-air drug market, primarily in the 1100 block of Fannin Street." *United States v. Wilson*, 116 F.3d 1066, 1073 (5th Cir. 1997), *vacated on other grounds by United States v. Brown*, 161 F.3d 256 (5th Cir. 1998) (en banc).[1] The Bottoms Boyz controlled the sale of drugs in their territory, they were expected to retaliate against anyone who "dissed" the gang, and they regularly carried (and often used) guns to protect their drug trade. *Id.* at 1074, 1079. Richardson's role in the gang was that of an "enforcer" or "reaper," which was a member "who enforced the rules of the gang and protected its territory and drug trade through acts of violence." *Id.* Following a nineteen day jury trial, Richardson was convicted on all counts. [Doc. No. 638]. The jury was not asked to make any determination concerning the weight of cocaine base for which Richardson was responsible.[2] *Id.*; *see also* Doc. No. 634 at 26.

On September 15, 1995, the Court held a sentencing hearing and determined that Richardson was responsible for 291.71 grams of cocaine base ("crack") and .90 grams of powder cocaine based upon the information set forth in the Presentence Investigation Report ("PSR"),

---

[1] The *Wilson* opinion was subsequently vacated only as to one count against Defendant Alfred A. Brown. *See United States v. Brown*, 161 F.3d 256, 257 n. 1 (5th Cir.1998).

[2] The trial took place before the Supreme Court's decisions in *Alleyne v. United States*, 570 U.S. 99 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which collectively held that any facts that increase the statutory maximum or minimum penalty for a crime must be submitted to the jury and found beyond a reasonable doubt.

which in turn was derived from the testimony of the witnesses at trial.[3] [Doc. No. 808]. The Court determined Richardson's total offense level was 42, and his criminal history category was VI[4], resulting in a guideline range of imprisonment on all counts of 360 months to life. The statutory sentencing range on Count 2 was determined to be ten years to life. [Doc. No. 1266 at 18, ¶ 121]. The Court sentenced Richardson under the then-mandatory sentencing guidelines[5] as follows: 120 months on Count 1, 420 months on Count 2, and 240 months on Count 22, with the terms of imprisonment to run concurrently. The Court additionally imposed three years of supervised release on Counts 1 and 22, and five years of supervised release on Count 2, with the terms of supervised release to run concurrently. [Doc. No. 808]. Thereafter, the Fifth Circuit vacated Richardson's sentence on Count 1 (racketeering) and remanded to the District Court for resentencing.[6] *Wilson* at 1085 (5th Cir.1997).

---

[3] The PSR found Richardson was responsible for a total of 291.71 grams of cocaine base and .90 grams of powder cocaine. [Doc. No. 1266 at 8, ¶ 33]. Of this amount, Richardson personally engaged in the sale of .98 grams of cocaine base on February 1, 1994 (Count 22). *Id.* at 7-8, ¶ 32.

[4] The Statement of Reasons actually states the Court found Defendant's criminal history category to be IV. [Doc. No. 808 at 4]. However, this appears to be a typographical error. [*See* Doc. No. 1266 at 10-14].

[5] Richardson was sentenced before the Supreme Court declared unconstitutional the provision of the federal sentencing statute making the sentencing guidelines mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005).

[6] The District Court had determined Richardson's sentencing guideline range on Count 1 (conspiracy/racketeering) by using the base offense level for second degree murder, due to Richardson's statements to police about a murder allegedly committed by one of his co-conspirators. *Wilson* at 1085. On appeal, the Fifth Circuit vacated the co-defendant's conviction for violent crimes in aid of racketeering, which was premised upon the aforementioned murder. *Wilson* at 1084. Because the Fifth Circuit vacated that conviction, it necessarily concluded that the District Court erred in calculating Richardson's guideline range by using the offense level for second-degree murder, rather than the alternative minimum base offense level provided in section 2E1.3. *Wilson* at 1085. Prior to Richardson's resentencing hearing, the government dismissed the charge against Richardson's co-defendant alleging murder. [Doc. No. 915].

On June 26, 1998, the Court resentenced Richardson. [Doc. No. 935]. The Court found Richardson's total offense level was 40, and his criminal history category was VI. *Id.* at 4. The Court resentenced Richardson to a 48 month term of imprisonment on Count 1, to run concurrently with his sentences on Counts 2 and 22. [Doc. No. 935]. On August 28, 2014, Richardson's sentence on Count 2 was reduced to 405 months, due to retroactive amendments to the Sentencing Guidelines.[7] [Doc. No. 1261].

## II.
## APPLICABLE LAW

At the time Richardson was sentenced, 21 U.S.C. § 841(b)(1) mandated a sentence of ten years to life for offenses involving fifty grams or more of cocaine base, § 841(b)(1)(A)(iii); five to forty years for offenses involving between five and fifty grams of cocaine base, § 841(b)(1)(B)(iii); and a maximum of twenty years for offenses involving less than five grams of cocaine base, § 841(b)(1)(C). On August 3, 2010, after more than two decades of substantial criticism from the Sentencing Commission and others in the law enforcement community that the harsh treatment of crack cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act increased the quantity of crack cocaine required to trigger the ten-year mandatory minimum sentence from 50 grams to 280 grams, and increased the quantity of cocaine base required to trigger the five-year mandatory minimum sentence from 5 grams to 28 grams.[8] *Id.* at 269. The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Id.* at 264.

---

[7] The Court determined Richardson's revised guideline range on Count 2 was 324 to 405 months. [Doc. No. 1262].

[8] The Fair Sentencing Act also eliminated the five year mandatory minimum sentence for simple possession of more than five grams of cocaine base. *Dorsey* at 269.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 404, 132 Stat 5194 (2018). The First Step Act provides in relevant part:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

### III.
#### ANALYSIS

**A.   Whether Defendant is eligible for relief under the First Step Act**

The government contends Richardson is ineligible for relief due to the amount of cocaine base attributed to him in the sentencing record." [Doc. No. 1278 at 9]. The government acknowledges "that this argument was recently rejected by the Fifth Circuit, but makes it to preserve it for future proceedings in this case." *Id.* at 9 (citing *United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019)). The Court agrees with the government that this argument is now foreclosed by the Fifth Circuit. In *Jackson*, the Fifth Circuit held, "[W]hether a defendant has a 'covered offense' under section 404(a) depends only on the statute under which he was convicted. If he was

convicted of violating a *statute* whose penalties were modified by the Fair Sentencing Act, then he meets that aspect of a 'covered offense.'" *Jackson* at 320. In this matter, Richardson was convicted of violating a statute whose penalties were modified by Section 2 of the Fair Sentencing Act, his violation occurred before August 3, 2010, and he has not filed a previous motion seeking First Step Act relief, nor was his sentence "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act." Accordingly, the Court finds Richardson is eligible for relief under the First Step Act.

### B.  Whether Relief is Warranted

In determining the appropriate sentence, the Court will consider the statutory range, the applicable sentencing guideline range, the sentencing factors set forth in 18 U.S.C. § 3553(a), and pre- and post-sentencing conduct. *See e.g. Jackson* at 321-22; *United States v. Williams*, 943 F.3d 841, 843-44 (8th Cir. 2019) (citing *Pepper v. U.S.*, 562 U.S. 476, 504 (2011)); *United States v. Allen*, 19-3606, 2020 WL 1861973, at *2 (6th Cir. Apr. 14, 2020). Richardson was originally subject to a statutory sentencing range of ten years to life in prison. Counsel for Richardson argues that because Count 2 of the indictment does not set forth the drug quantity involved in the conspiracy, and because the jury's verdict makes no finding as to the amount of narcotics involved in the conspiracy, Richardson's statutory sentencing range is now zero to twenty years under the First Step Act. [Doc. No. 1276 at 2 (citing *Alleyne v. United States*, 570 U.S. 99 (2013))]. The Court agrees.

The combined effect of the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013), is that any fact that increases the statutorily mandated maximum or minimum penalty for a crime must be submitted to the jury and found beyond a reasonable doubt. Relying on prior drug quantity findings that were never

submitted to a jury to determine First Step Act eligibility would be inconsistent with the Supreme Court's reasoning in *Alleyne* and *Apprendi* and the Sixth Amendment.[9] *See e.g. United States v. Jones*, 96 CR 553-4, 2020 WL 1848210, *5 (N.D. Ill. Apr. 13, 2020); *United States v. Martin*, 2019 WL 2571148, *2 (E.D.N.Y. June 20, 2019) ("While *Alleyne* and *Apprendi* do not provide retroactive relief, Congress did intend to apply current statutory penalties retroactively, and, we can assume, current constitutional protections.") Any interpretive uncertainty here must be resolved "under the rule, repeatedly affirmed, that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 229 (1999) (internal quotation marks omitted); *see also Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (courts assume Congress "legislates in the light of constitutional limitations"); *United States v. Williams*, 402 F.Supp.3d 442, 448 (N.D. Ill.2019) ("[B]y 2018 Congress knew that courts were no longer constitutionally permitted to impose mandatory minimums based solely on judicial fact-finding at sentencing. Congress would not have expected federal courts to then double-down on those unconstitutional findings in applying the First Step Act.").

---

[9] Although neither *Apprendi* nor *Alleyne* apply retroactively to habeas motions brought pursuant to 28 U.S.C. § 2255, it is not necessarily the case that nonretroactivity principles apply to collateral review pursuant to 18 U.S.C. § 3582(c). *U.S. v. Tyree Lamar Slade*, 2019 WL 3061200, *3 (W.D. Va. July 12, 2019); *c.f. U.S. v. Fanfan*, 558 F.3d 105, 108 (1st Cir. 2009). When considering motions under section 2255, courts begin with the presumption that the defendant has been fairly and finally convicted. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). In contrast, a sentence reduction under the First Step Act is available not because a sentence is fundamentally illegal, but rather, it is available due to "a congressional act of lenity." *Dillon v. United States*, 560 U.S. 817, 828 (2010). By passage of the First Step Act Congress has determined, as a matter of equity and mercy, that if certain conditions are met a trial judge, using his or her discretion, may treat a discreet number of criminal judgments as alterable. Thus, Congress has determined the cost of modifying these sentences outweighs the need for finality. Accordingly, courts are not constrained by the protections traditionally owed to final judgments and may graft the protections of currently existing constitutional standards onto their exercise of that discretion. *See also Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) (Declaring a rule nonretroactive does not imply "that the right at issue was not in existence prior to the date the 'new rule' was announced. . . . [T]he source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule.")

In this matter, a jury convicted Richardson of violating 21 U.S.C. § 841(a) based on his participation in the drug distribution conspiracy, and, relying on the PSR, the Court sentenced Richardson under 21 U.S.C. § 841(b)(1)(A) after finding 291.71 grams of cocaine base chargeable to Richardson. Because the conspiracy charged in the indictment did not specify the quantity of cocaine base involved, nor did the jury make such a finding, a court sentencing Richardson as if the Fair Sentencing Act had been in effect at the time of his offense would find that he is now subject to the penalties in 21 U.S.C. § 841(b)(1)(C) rather than the statutory mandatory minimums in § 841(b)(1)(A)–(B). *See e.g. United States v. Jones*, 96 CR 553-4, 2020 WL 1848210, at *5 (N.D. Ill. Apr. 13, 2020); *United States v. Paul*, 1:98-CR-192-4 (LMB), 2019 WL 6792752, at *5 (E.D. Va. Dec. 12, 2019); *United States v. Lee*, 8:89-CR-4-T-17TGW, 2019 WL 6701411, at *4-5 (M.D. Fla. Dec. 9, 2019); *United States v. Stone*, 1:96 CR 403, 2019 WL 2475750, at *2-3 (N.D. Ohio June 13, 2019). Accordingly, the court finds Richardson's statutory maximum sentence on Count 2 under the First Step Act is twenty years. Although Richardson's sentencing guideline matrix results in a range of 324 to 405 months incarceration, it is statutorily capped at 240 months. Accordingly, Richardson's sentencing guideline range is 240 months.

Nevertheless, the government is correct that whether to grant any reduction in sentence under the FSA is entirely discretionary. [Doc. No. 1278 at 5]. As set forth in the Act, "A court that imposed a sentence for a covered offense *may* . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed," and nothing in section 404 of the First Step Act "shall be construed to require a court to reduce any sentence pursuant to this section." FSA § 404(b), (c) (emphasis added). *See also Jackson* at 321; *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019).

Pursuant to 18 U.S.C. § 3553(a)(1), the Court shall consider "the nature and circumstances of the offense . . . ." Here, the offense involved an "open-air drug market" run by a gang in which Richardson was a leader. *Wilson*, 116 F.3d at 1074, 1079; *see also* Doc. No. 1266 at 8, ¶ 36. Richardson "fronted drugs to other gang members, who sold directly on the street." *Id.* at 1076. The testimony at trial was that the gang committed numerous acts of violence in the course of dealing drugs, and that Richardson regularly committed violent acts on behalf of the gang. *Id.* at 1079. Further, Richardson was assessed additional guideline points for possessing a firearm in the course and scope of the conspiracy.[10] [Doc. No. 1266 at 8, ¶ 34]

Section 3553(a)(1) instructs courts to consider "the history and characteristics of the defendant." Richardson is 55 years old. He has been incarcerated for the instant offense since September 18, 1994 – over twenty-five and a half years. His current projected release date is September 12, 2026. While in BOP custody, Richardson has completed 108 hours of educational courses. Richardson has numerous prior convictions, such as simple battery, misdemeanor theft, battery on a police officer, simple arson, and illegal discharge of a firearm. [Doc. No. 1266 at 10-14]. Richardson has two children, he has grandchildren, and he appears to have maintained contact with his family during his incarceration. [Doc. No. 1276 at 6]. Richardson appears to have had a difficult upbringing with little supervision. He presently suffers from optic nerve degeneration

---

[10] The justification for the two points is set forth in the PSR as follows:

> The government described the defendant as the enforcer for the gang. The enforcer, according to the government, supplies weapons to gang members. The District Court heard testimony that guns were used by the Bottom Boyz in relation to the drug trade. The defendant sold drugs in the 1100 block of Fannin, which is Bottom Boyz territory. Therefore, he received a two (2) point adjustment for possessing a weapon.

[Doc. No. 1266 at 8, ¶ 34].

related to glaucoma "which produces blurred vision, sensitivity to light, and inhibits his ability to read or participate in a lot of educational programing" *Id.* at 4.

Richardson has an extensive disciplinary record with the Bureau of Prisons ("BOP"), with at least thirty-four incidents involving assaultive behavior, threats of bodily harm, possession of a weapon, fighting, and disruptive conduct. Counsel argues this is primarily due to two reasons. First, counsel argues:

> In 1995, Richardson, who is 4'11" tall, was sent to some of the most dangerous prisons in the B.O.P. Given his small stature, he was a target and was often forced to fight in order [to] prevent being taken advantage of. While certainly not a justification for his actions, it does explain some of his early conduct in prison.

*Id.* at 4. As to the second reason for his poor disciplinary record, counsel argues:

> [W]hat really explains his prison record is the fact that Richardson is the lead plaintiff in a class action lawsuit against the Director of the Bureau of Prisons and USP Lewisburg. *See Richardson v. Bledsoe*, 829 F.3d 273 (3d. Cir. 2016) (opinion concerning class action certification that details Richardson's allegations against USP Lewisburg). In this lawsuit, brought by the Pennsylvania Institutional Law Project, lurid details of the treatment of inmates in the Special Management Unit (SMU) came to light, including placing hostile inmates in cells with other inmates to increase the risk of inmate on inmate violence. If an inmate refused to share a cell with a violent inmate, then he would be punished by being placed in painful restraints. In the lawsuit, Richardson details this happening when a violent inmate known as the "the prophet" was placed in his cell and when Richardson refused he was painfully punished by the guards.

*Id.* at 4-5 (footnote omitted). The Court notes this suit remains pending in the Middle District of Pennsylvania. *See Richardson v. Kane*, Case No. 3:CV–11–2266 (M.D. Penn.).[11] Counsel concludes that while Richardson has not been a model inmate, many of his disciplinary actions

---

[11] The problems at this particular institution have been well-chronicled and mirror some of the allegations made in the class action suit referenced above. *See e.g.*, Report of the District of Columbia Corrections Information Council, April 6, 2018, available at https://cic.dc.gov/sites/default/files/dc/sites/cic/publication/attachments/USP%20Lewisburg%20SMU%20Report%20FINAL%204.6.18_0.pdf (last visited Apr. 21, 2020); Report of OIG, Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness, July 2017, available at https://oig.justice.gov/reports/2017/e1705.pdf (last visited Apr. 21, 2020).

before the class action lawsuit were "attempts to resist unfair treatment by the guards," and that since the filing of the class action suit, "he has been repeatedly written up as retaliation for him so publically [sic] exposing abuse in the prisons," and in an effort to discredit him in his role as the lead plaintiff in the class action suit. *Id* at 5. Finally, counsel argues that even assuming the veracity of Richardson's BOP disciplinary record, a sentence of twenty years of incarceration is sufficient, but not greater than necessary, to satisfy the purposes of 18 U.S.C. § 3553. *Id.*

The government responds that the nature and circumstances of the offense militate against any relief. The government notes Richardson "was one of three leaders of the 'Bottom Boys,' a violent gang that committed murders, attempted murders, and assaults with firearms." [Doc. No. 1278 at 5]. The government characterizes Richardson's offense conduct as much more severe than portrayed by defense counsel. *Id.* at 6-7. The government additionally points to Richardson's significant criminal history, noting he is a category VI, and to his extensive disciplinary record with BOP. *Id.* at 7. The government additionally takes issue with defense counsel's characterization of Richardson's class action suit against BOP, emphasizing Richardson's allegations have not been proven as the case is still at an early stage. *Id.* The government concludes Richardson "has failed to demonstrate that his violent characteristics are not an ongoing threat to the public," and therefore relief should be denied. *Id.* at 8-9.

After consideration of the § 3553(a) factors, including the history and characteristics of this Defendant, the need to afford adequate deterrence to criminal conduct and to promote respect for the law, the parties' arguments, and Congress's intent in passage of the First Step Act, the Court determines that a reduction of Defendant's sentence of imprisonment on Count 2 to 360 months is sufficient but not greater than necessary to comply with the purposes of sentencing. Such a sentence is a substantial prison term, commensurate with the crimes Richardson committed. In

this Court's opinion, a greater sentence is not necessary to prevent unwarranted departures when compared with similar sentences in this era. However, the Court declines to reduce Richardson's term of supervised release, as the underlying record indicates Richardson's transition to a law-abiding member of the community will likely not be an easy endeavor for him and will require the assistance and resources of the United States Probation Office. Accordingly,

IT IS HEREBY ORDERED that the Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act [Doc. No. 1276] is GRANTED IN PART, and the Court will issue an amended judgment reducing Defendant's term of incarceration on Count 2 to 360 months. Except as modified in this paragraph, all other provisions of the Judgment imposed on June 26, 1998 [Doc. No. 935] REMAIN in effect.

SIGNED this 22nd day of April, 2020.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE